JOEL D. DAVIS and EVELYN DAVIS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Davis v. Commissioner
Docket No. 1774-89.
United States Tax Court
T.C. Memo 1990-588; 1990 Tax Ct. Memo LEXIS 673; 60 T.C.M. (CCH) 1256; T.C.M. (RIA) 90588; November 19, 1990, Filed *673 Decision will be entered under Rule 155. Helen E. Marmoll, for the petitioners. Warren P. Simonsen, for the respondent. COHEN, Judge. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency of $ 51,297 in petitioners' Federal income tax for 1984 and additions to tax of $ 2,565 under section 6653(a)(1); 50 percent of the interest due on the amount of the underpayment attributable to negligence under section 6653(a)(2); and $ 12,824 under section 6661(a). Unless otherwise indicated, *676 all section references are to the Internal Revenue Code, as amended and in effect for the year in issue. After concessions, the issues for decision are (1) whether petitioners are entitled to a foreign earned income exclusion under section 911; (2) whether petitioners are entitled to their claimed charitable contribution deduction; (3) whether petitioners are entitled to a bad debt deduction; and (4) whether petitioners are liable for the additions to tax under sections 6653(a)(1), 6653(a)(2), and 6661(a). FINDINGS OF FACT Some of the facts have been stipulated, and the facts set forth in the stipulations are incorporated in our findings by this reference. Petitioners Joel D. Davis (petitioner) and Evelyn Davis were residents of Israel at the time the petition in this case was filed. Prior to 1982, petitioners resided in Silver Spring, Maryland. In August 1982, petitioners moved to Israel. Petitioners became Israeli citizens. Petitioners remained in Israel through November 1989. Petitioner opened a checking account in the United States (United States account) for the receipt of income and for the payment of expenses while he was in Israel. Petitioner's father had signature *677 authority over that account. Petitioner also maintained a bank account in Israel (Israel account). Petitioner's father arranged for the periodic transfer of funds from the United States account to the Israel account. During 1984, petitioner owned a 66-2/3 share in S.S. Abensohn & Company (SSA) and JS&J Management Corp. (JS&J). John J. Canto (Canto) owned the remaining shares of SSA and JS&J. SSA was an accounting firm that provided accounting and tax services. JS&J was formed to provide investment services. In 1982, SSA had a customer base of approximately 900 clients and annual gross receipts in excess of $ 1,000,000. Petitioner's clients represented approximately 50 to 60 percent of those receipts. In 1984, SSA had a total client base of approximately 800 clients. During 1984, petitioner performed services for SSA. He met with clients in Israel and consulted with SSA on customer relations with the existing client base. He also personally kept in contact with many of his clients, advised Canto on collection matters, and was responsible for developing 10 to 15 new clients. Canto determined that petitioner was to be paid $ 24,000 for his services for SSA. Petitioner *678 was paid $ 12,000 of that amount in 1984. During 1984, petitioner performed client relations services and sought new clients for JS&J. Petitioner's client relations duties included appeasing disgruntled clients and insuring that projects were progressing efficiently. Petitioner also worked on projects in the development stage at that time. Those projects included motels in Tel Aviv and Safed, Israel, silver recovery from film, fish farming, and container leasing. In 1984, petitioner received $ 69,400 from JS&J for the services that he performed. In 1980, petitioner purchased Weltman's Liquor Store (Weltman's). Norman Mininberg (Mininberg), a friend of petitioner, was responsible for the management of Weltman's. In 1982, Mininberg suffered financial difficulties. Petitioner provided Mininberg with $ 40,000. Mininberg furnished no collateral, and no interest was charged. The $ 40,000 was not returned to petitioner. Petitioner did not communicate with Mininberg after 1982. On June 3, 1983, petitioner wrote a $ 5,000 check to American Committee, David Shappell College. That check was endorsed by the Union Bank of Israel, Ltd., and the Bankers Trust Company of New York *679 in June 1983. In September 1984, petitioner wrote a $ 600 check to The Judah Foundation. That check was endorsed by the First International Bank of Israel but bore no endorsement date. Petitioners' 1984 Federal income tax return was prepared by Canto. Petitioners gave a general power of attorney to their attorney, Joseph Ely (Ely). Ely signed the return on behalf of petitioners. Petitioners did not review the returns. On their 1984 Federal income tax return, petitioners claimed an $ 80,000 foreign earned income exclusion and a $ 549 sales tax deduction. Petitioners also claimed a $ 2,778 charitable contribution and a $ 3,988 carryover of charitable contributions. In 1986, petitioners filed an amended 1984 return. On that amended return, petitioners reported a $ 57,500.74 partnership loss and claimed a $ 3,550 depreciation expense. Respondent determined, among other things, that petitioners were not entitled to their foreign earned income exclusion, sales tax deduction, and claimed charitable contribution. Petitioners have conceded the sales tax deduction issue. OPINION Foreign Earned Income Exclusion
*680 Petitioners bear the burden of proving that they are entitled to the exclusion they claimed. Rule 142(a), Tax Court Rules of Practice and Procedure.
Section 911 permits United States citizens who are bona fide residents of foreign countries to exclude from United States income tax income earned from sources within foreign countries. Specifically, section 911(a), for the year in issue, provides in relevant part: (a) Exclusion From Gross Income. -- At the election of a qualified individual (made separately with respect to paragraphs (1) and (2)), there shall be excluded from the gross income of such individual, and exempt from taxation under this subtitle, for any taxable year -- (1) the foreign earned income of such individual * * * Section 911(b)(1)(A) provides the following definition of "foreign earned income": (A) In General. -- The term "foreign earned income" with respect to any individual means the amount received by such individual from sources within a foreign country or countries which constitute earned income attributable to services performed by such individual during *681 the period described in subparagraph (A) or (B) of subsection (d)(1), whichever is applicable.
The term "earned income" is defined in section 911(d)(2)(A) as follows: (A) In General. -- The term "earned income" means wages, salaries, or professional fees, and other amounts received as compensation for personal services actually rendered, but does not include that part of the compensation derived by the taxpayer for personal services rendered by him to a corporation which represents a distribution of earnings or profits rather than a reasonable allowance as compensation for the personal services actually rendered.
Respondent contends that petitioners have not proven that petitioner had "earned income" under section 911(d)(2)(A). Specifically, respondent contends that petitioner has not shown that the amounts he received from SSA and JS&J were amounts received for performing personal services. Rather, respondent contends that those payments were a distribution of earnings and profits. In 1982, SSA had a total client base of approximately 900 clients. When petitioner left for Israel, his clients represented 50 to 60 percent of the total SSA client base. In *682 1984, SSA had a total client base of approximately 800 clients; petitioner was responsible for the addition of 10 to 15 new clients for SSA. In 1984, SSA paid petitioner $ 12,000. Petitioner and Canto testified that petitioner performed client relations duties for SSA. SSA's client base was extensive, and the realities of the business world suggest that client relations problems existed. Petitioner's testimony about the services he performed for JS&J was detailed, uncontradicted, and unimpeached. Petitioner testified about specific projects and his dealings with the general partners in those projects. Further, petitioner testified about new projects he attempted to develop in Israel, including motels in Tel Aviv and Safed, silver recovery from film, fish farming, and container leasing. Canto's testimony about petitioner's services was equally detailed. There is no evidence that the amounts petitioner received from SSA or JS&J represented a distribution of earnings and profits. We have no basis for rejecting the testimony of petitioner or Canto. Respondent also argues that under section 1.911-2(b)(3), Income Tax Regs., other members of SSA and *683 JS&J who performed work for petitioner's clients must have looked to petitioner for guidance in order for those services to be attributable to petitioner. Respondent contends that petitioner's absence precludes such a result. Section 1.911-2(b)(3), Income Tax Regs., provides: (3) Earned income and employed assistants. Earned income includes all fees received by a taxpayer engaged in a professional occupation (such as a doctor or lawyer) in the performance of professional activities. Professional fees constitute earned income even though the taxpayer employs assistants to perform part or all of the services rendered, provided the taxpayer's patients or clients look to the taxpayer as the person responsible for the services rendered.
Respondent's reliance on that section is misplaced. It is not the employees, but rather the clients, who must look to the taxpayer as the person responsible for the services rendered. The logical inference from the evidence of the services performed by petitioner is that the clients were looking to *684 petitioner for those services. Thus petitioner has satisfied the requirements of section 911 and the applicable regulations. Charitable Contribution
To secure a deduction for a charitable contribution under section 170(a), (b)(1), and (c), petitioner must establish that he has made an unconditional gift to a qualified entity. Qualified entities under section 170 are essentially those organizations that qualify for an exemption from tax under section 501(c)(3). Foreign entities are not qualified entities. Sec. 170(c). Generally, an individual may only deduct charitable contributions to the extent that they do not exceed 50 percent of adjusted gross income. Sec. 170(b)(1)(A). Any excess charitable contributions are carried forward over the following 5 successive years and are deductible subject to the limitations contained in section 170(d)(1)(A). Petitioners submitted at trial a copy of a $ 5,000 check payable to David Shappell College that purportedly represents a charitable contribution. The check submitted in evidence bears various endorsements, one of which is from Union Bank *685 of Israel, Ltd. Petitioners also submitted a copy of a $ 600 check payable to The Judah Foundation. The copy of the check bears an endorsement from the First International Bank of Israel but does not bear an endorsement date. Petitioner also testified that he was entitled to approximately $ 6,000 in deductions for contributions to the Hebrew Institute of California not claimed on the 1984 return or on the amended return filed in 1986. Petitioners offered no other evidence to substantiate their claimed charitable contribution deduction. We cannot conclude on the evidence that the amounts claimed by petitioners were spent in 1983 or 1984 or that any amount was available to be carried over from 1983 to 1984. Further, we cannot conclude that petitioners contributed any amount to qualified organizations. Petitioners have not met their burden of proving entitlement to their claimed deductions. Approximately 6 months after trial of this case, petitioners filed a Motion to Add to Exhibit List. In that motion, petitioners sought to introduce, among other things, evidence relating specifically to petitioners' claimed charitable contribution. The tendered materials consisted of a copy *686 of a letter dated August 8, 1990, from the Executive Director of the David Shappell College of Jewish Studies, purporting to clarify that David Shappell College of Jewish Studies and Yeshivat Darche Noam are the same institution; a copy of a letter dated May 15, 1978, from the Internal Revenue Service, informing the Hebrew Institute of California that it was an exempt organization under section 501(c)(3); and a copy of a letter dated May 24, 1989, from the Internal Revenue Service, informing American Friends of Darche Noam, Inc., that they had retained their exempt status under section 501(c)(3). We denied petitioners' motion, because it was untimely and the new evidence would not eliminate the deficiencies in petitioners' proof. Moreover, the letter dated August 8, 1990, is inadmissable hearsay. Bad Debt Deduction
Section 166 provides that a taxpayer may deduct any bad debt that becomes worthless within the taxable year. Generally, a taxpayer must show that the debt was created or acquired in connection with a trade or business and that the debt became worthless during the taxable *687 year. Petitioner contends that the $ 40,000 he provided to Mininberg was a loan and that he is entitled to a bad debt deduction because the loans subsequently became worthless. Petitioner argues that the intent of the parties controls the determination of whether a loan existed. Respondent argues that the $ 40,000 represents either a contribution of capital or a gift. Petitioner and Mininberg did not execute any formal loan documents for the amount provided to Mininberg. No interest was charged. Petitioners did not claim a section 166 loss on their 1984 return. Rather, the bad debt deduction issue was first raised in an amendment to petition filed shortly prior to trial in 1990. Petitioner did not seek repayment of the amount and testified that he had not directly communicated with Mininberg after 1982. Petitioner offered the following explanation of why he wrote two separate $ 10,000 checks to Mininberg on the same day: A Yes, he probably wanted $ 20,000 and I had only agreed to give him ten and then after he begged a little bit while longer I probably gave him the other ten.
Petitioners have not proven that a debt existed and became worthless. Further, *688 the delay in pursuing collection on the purported loan and the lack of formalities convince us that the amount provided Mininberg was not a loan. Accordingly, petitioners are not entitled to a bad debt deduction. Additions to Tax
Section 6653(a)
Section 6653(a)(1), for the year in issue, provides for an addition to tax equal to 5 percent of the underpayment of tax if any part of the underpayment is due to negligence or intentional disregard of the rules or regulations. Section 6653(a)(2) provides for a further addition to tax equal to 50 percent of the interest due on the underpayment attributable to negligence. In light of our above conclusions, the only items subject to a negligence analysis are petitioners' claimed charitable contribution and sales tax deductions. Petitioner testified that he believed that the organizations to which he contributed were qualified organizations. Petitioner's testimony on that issue was uncontradicted and unimpeached. Accordingly, petitioners are not liable for the section 6653(a)(2) addition to tax for negligence with respect to that *689 item. Petitioners, however, are liable for the section 6653(a)(2) addition to tax for negligence with respect to their concededly improper sales tax deduction. Section 6661
Section 6661, for the year in issue, provides an addition to tax equal to 25 percent of an underpayment of tax attributable to a substantial understatement of income tax. Sec. 6661(a); Pallottini v. Commissioner, 90 T.C. 498 (1988).An understatement is substantial if it exceeds the greater of 10 percent of the tax required to be shown on the return or $ 5,000. Sec. 6661(b)(1)(A). We have concluded that the only understatement of income tax is attributable to petitioners' claimed charitable contribution and the conceded sales tax deduction. Assuming the recomputed deficiency is less than the statutory amounts, petitioners are not liable for the section 6661 addition to tax. To reflect the foregoing, Decision will be entered under Rule 155.